**Presentment Date:  May 11, 2026 at 12:00 p.m. (prevailing Eastern Time)**
**Objection Deadline:  May 6, 2026 at 4:00 p.m. (prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Brian F. Moore
John McClain
Peter Fishkind

*Attorneys for Albert Togut,*
*Not Individually But Solely in His Capacity as*
*the Chapter 7  Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                   :
In re:                                             :    Chapter 7
                                                   :
ZACH EHRLICH,                                      :    Case No. 26-10537 (MEW)
                                                   :
                              Debtor.              :
                                                   :
                                                   :
-------------------------------------------------------------------x

### NOTICE OF PRESENTMENT OF STIPULATION AND ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT SALE OF 1467 BEDFORD STREET LLC

**PLEASE TAKE NOTICE** that Albert Togut, not individually but solely in his capacity as the Chapter 7 trustee (the "Trustee") of the estate (the "Estate") of Zach Ehrlich (the "Debtor"), by and through his attorneys, Togut, Segal & Segal LLP, will present for signature a proposed *Stipulation and Order Modifying the Automatic Stay to Permit Sale of 1467 Bedford Street LLC* (the "Stipulation and Order"), a true and complete copy of which is annexed hereto as **Exhibit 1**, to the Honorable Michael E. Wiles, United States Bankruptcy Judge, in his Chambers, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 on **May 11, 2026 at 12:00 p.m. (prevailing Eastern Time)** (the "Presentment Date").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation and Order must be made in writing and conform with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court, and be filed with the Clerk of the Court at the address set forth above, with a copy delivered

directly to Bankruptcy Judge Wiles' Chambers, and served upon:  (i) the undersigned attorneys for the Trustee;  (ii) The Yitzhak Law Group, counsel for the Debtor,  Attn: Eria Yitzhak, Esq. (erica@etylaw.com);  (iii) Law Office of Joseph Cohen PC, counsel for 1467 Bedford Street LLC, Attn: Joseph J. Cohen, Esq. (josephcohen@jcohenlaw.net);  and (iv) the Office of the United States Trustee, One Bowling Green, Suite 534, New York, New York 10004, Attn:  Mark Bruh, Esq., Trial Attorney (mark.bruh@usdoj.gov), so as **to be filed and actually received by all of them not later than 4:00 p.m. (prevailing Eastern Time) on May 6, 2026**.  If no timely written objections are filed and received in accordance with the foregoing, the Stipulation and Order may be signed by the Court.

DATED:  New York, New York
        April 22, 2026

> Albert Togut
> Not Individually But Solely in His Capacity as
> Chapter 7 Trustee,
> By His Attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:
>
> /s/ Brian F. Moore
> BRIAN F. MOORE
> JOHN MCCLAIN
> PETER FISHKIND
> One Penn Plaza, Suite 3335
> New York, New York 10119
> (212) 594-5000
> bmoore@teamtogut.com
> jmcclain@teamtogut.com
> pfishkind@teamtogut.com

## Exhibit 1

## Stipulation and Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:                                                            :   Chapter 7
                                                                  :
ZACH EHRLICH,                                                     :   Case No. 26-10537 (MEW)
                                                                  :
                             Debtor.                              :
                                                                  :
------------------------------------------------------------------------x

**STIPULATION AND ORDER MODIFYING THE AUTOMATIC STAY
TO PERMIT SALE OF 1467 BEDFORD STREET LLC**

This stipulation and order (the "Stipulation and Order") is entered into by and between Zach Ehrlich (the "Debtor"), Albert Togut, not individually but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the estate (the "Estate") of the Debtor, and 1467 Bedford Street LLC ("Bedford," along with the Debtor and the Trustee, the "Parties"). This Stipulation and Order is based on the following facts and circumstances:

**WHEREAS**, on March 12, 2026 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") seeking relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") [Docket No. 1];

**WHEREAS**, as disclosed in the Petition, the Debtor holds a 60% interest in Nu Bedford LLC;

**WHEREAS**, the Debtor is the Managing Member of Nu Bedford LLC;

**WHEREAS**, Nu Bedford LLC owns 10% of 1467 Bedford Investor LLC and is the Managing Member for 1467 Bedford Investor LLC;

**WHEREAS**, 1467 Bedford Investor LLC is the 100% owner of Bedford and is the Managing Member for Bedford;

**WHEREAS**, prior to the filing of the Petition, Bedford entered into a contract of sale attached hereto as **Exhibit A** (the "Contract") to sell substantially all its assets to 821 Caroll LLC for a total purchase price of $6,750,000 (the "Purchase Price") as described in more detail in the Contract (the "Sale");

**WHEREAS**, prior to the entrance into the Contract, the broker, Michael Sherman, for Bedford engaged in a diligent marketing process for the Sale as more fully described in the declaration attached hereto as **Exhibit B** (the "Sherman Declaration");

**WHEREAS**, the Sale does not currently have a scheduled date for the closing of the sale;

**WHEREAS**, pursuant to the automatic stay provisions under section 362(a) of the Bankruptcy Code (the "Stay"), the Debtor is presently stayed from taking action to effectuate the Sale;

**WHEREAS**, on March 13, 2026, the Trustee was appointed by the Bankruptcy Court (the "Trustee Order") [Docket No. 4];

**WHEREAS,** in the exercise of his business judgment, the Trustee believes that the Purchase Price represents a fair value for Bedford and that a limited lifting of the Stay to permit the Sale at the Purchase Price would provide benefits to the Estate;

**WHEREAS,** time is of the essence to consummate the Sale due to the economic circumstances of 821 Caroll LLC;

**WHEREAS,** there are multiple individuals and entities that hold equity interests in Bedford and would receive proceeds upon the consummation of the Sale (the "Bedford Investors");

**WHEREAS,** the distribution of the net proceeds from the Sale to the Bedford Investors requires diligence to ensure, among other things, that the Debtor does not hold any undisclosed interest in Bedford;

2

**WHEREAS**, to allow the Sale to be consummated and provide benefits to the Estate, the Parties have agreed to modify the Stay, upon the terms and conditions set forth herein.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the Parties, as follows:

1. The foregoing recitals are hereby fully incorporated into and made an express part of this stipulation and order (this "Stipulation").

2. The Stay is hereby modified for the limited purpose of allowing the Sale to be consummated.

3. Upon the consummation of the Sale, the Trustee shall oversee the distribution of all proceeds from the Sale.

4. The Trustee shall hold the remaining net proceeds of the Sale, after the payment of any required liens, encumbrances, or customary closing costs, in escrow.

5. The Trustee shall conduct any diligence that is needed to ensure that the distribution of the net proceeds to the Bedford Investors is fully compliant with the Bankruptcy Code and to ensure, among other things, that the Debtor does not hold any undisclosed interest in Bedford.

6. The Trustee shall facilitate the distribution of the net proceeds based on the respective interests of the Bedford Investors upon completing his diligence as contemplated herein.

7. Neither this Stipulation, nor any actions taken pursuant hereto, shall affect the rights of the Trustee in the Chapter 7 Case other than to enforce the terms of this Stipulation.

3

8. The Stay shall remain in full force and effect other than as to permit the Sale of Bedford, as contemplated herein.

9. Each person who executes this Stipulation by or on behalf of the Parties warrants and represents that such person has been duly authorized and empowered to execute and deliver this Stipulation on behalf of that Party.

10. This Stipulation shall become binding and enforceable upon being "So Ordered" by the Bankruptcy Court.

11. This Stipulation may be signed in counterpart by facsimile signature for purposes of ECF filing.

12. The Bankruptcy Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

Dated:   April 22, 2026
New York, New York

ALBERT TOGUT, not individually but solely in his capacity as Trustee,
By: His Attorneys,
TOGUT, SEGAL & SEGAL LLP

/s/ Brian F. Moore
BRIAN F. MOORE
JOHN MCCLAIN
PETER FISHKIND
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Dated:   April 22, 2026
New York, New York

Zach Ehrlich
By:

/s/ Zach Ehrlich

Dated:    April 22, 2026
          Great Neck, New York

                                                    1467 Bedford Street LLC
                                                    By: Joseph J. Cohen, Esq.

                                                    */s/ Joseph J. Cohen*
                                                    Joseph J. Cohen, Esq.
                                                    Law Office of Joseph Cohen PC
                                                    1 Linden Place, Suite 210
                                                    Great Neck, NY 11021
                                                    (212) 858-0167
                                                    Josephcohen@jcohenlaw.net


**SO ORDERED:**

this _____ day of May, 2026
in New York, New York


_____

HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

### Contract

Contract of Sale for New York office, commercial and multi-family residential premises

## stewart title

### Contract of Sale - Office, Commercial and Multi-Family Residential Premises

#### Table of Contents

| | | | |
|---|---|---|---|
| Schedule A. | Description of premises (to be attached | Section 8. | Destruction, damage or condemnation |
| Schedule B. | Permitted exceptions | Section 9. | Covenants of seller |
| Schedule C. | Purchase price | Section 10. | Seller's closing obligations |
| Schedule D. | Miscellaneous | Section 11. | Purchaser's closing obligations |
| Schedule E. | Rent schedule (to be attached) | Section 12. | Apportionments |
| Section 1. | Sale of premises and acceptable title | Section 13. | Objections to title, failure of seller or purchaser to perform and |
| Section 2. | Purchase price, acceptable funds, existing mortgages, purchase money mortgage and escrow of downpayment | Section 14. | Broker |
| Section 3. | The closing | Section 15. | Notices |
| Section 4. | Representations and warranties of seller | Section 16. | Limitations on survival of representations, warranties, covenants and other obligations |
| Section 5. | Acknowledgments of purchaser | Section 17. | Miscellaneous provisions Signatures and receipt by escrowee |
| Section 6. | Seller's obligations as to leases | | |
| Section 7. | Responsibility for violations | | |

stewart title

CONTRACT dated the _____ day of Janaury, 2026

Between
1467 Bedford Street LLC                                            ("Seller") and

321 Caroll LLC.                      ("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## Schedule A
### DESCRIPTION OF PREMISES

The Premises are located at or known as 1467 Bedford Avenue, Brooklyn, NY

Tax Map Designation:
Section: _____, Block: 1239, Lot 5
( ☐ metes and bounds description attached hereto)

## Schedule B
### PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7.

(a)    Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

(b)    Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c)    Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d)    Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

2

**stewart title**

### Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows

(a) By check subject to collection, the receipt of which is hereby acknowledged
by Seller                                                                          $ 337,500.00

(b) By check or checks delivered to Seller at the Closing in accordance with the provisions
(c) of §2.02                                                                        $6,412,500.00

(d) By acceptance of title subject to the following Existing Mortgage(s)            $ _____
By execution and delivery to Seller by Purchaser or its assignee of a note secured by a
Purchase Money Mortgage on the Premises, in the sum of                              $ _____
payable as follows

Making for a total Purchase Price of                                                $6,750,000.00

### Schedule D
### MISCELLANEOUS

1    Title insurer designated by the parties (§1.02) any New York State Licensed Title Insurer

2    Last date for consent by Existing Mortgagee(s) (§2.03(b)) _____

3    Maximum interest Rate of any Refinanced Mortgage (§2.04(b)). _____

4    Prepayment Date on or after which Purchase Money Mortgage may be prepaid
(§2.04(c))                                                          _____

5.   Seller's tax identification number(s) (§2.05) _____

6    Purchaser's tax identification number(s) (§2.05) 11-3636380

7    Scheduled time and date of Closing (§3.01) February 15" 2026 at 10 A M

8    Place of Closing (§3.01) As designated by purchaser's lending institution

9    Assessed valuation of Premises (§4.10) _____

10   Fiscal year and annual real estate taxes on Premises (§4.10) _____

11   Tax abatements or exemptions affecting Premises (§4.10) _____

12   Assessments on Premises (§4.13) _____

13   Maximum Amount which Seller must spend to cure violations, etc. (§7.02) $67,500.00

Maximum Expense of Seller to cure title defects, etc. (§13.02) $ (Lines 13 & 14 to be considered
in the combined aggregate and not as separate expenses

14   Broker, if any (§14.01) Baseline Real Estate Advisors and Compass Realty

15   Party to pay broker's commission (§14.01): Seller

16   Address for notices (§15.01) If to Seller _____

with a copy to  Joseph J. Cohen, Esq.
Law Office of Joseph Cohen PC
1 Linden Place, Suite 210
Great Neck, NY 11021
(212) 858-0167
Josephcohen@jcohenlaw.net

If to Purchaser

821 Carroll LLC  C/O Jason Bijur  123 7" Avebue  No   216, Brooklyn, NY 11215

with a copy to  Paul Solomon, Esq., 290 Central Avenue, Lawrence  NY 11559

18   Limitation Date for actions based on Seller's surviving representations and other obligations
(§16.01)  6 months

19   Additional Schedules or Riders (§17.07) _____

### Schedule E
### RENT SCHEDULE

( ☐ If checked, annexed hereto)

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

## Section 1. Sale of Premises and Acceptable Title

stewart title

§1 01  Seller shall sell to Purchaser, and Purchaser shall purchase from Seller  at the price and upon the terms and conditions set forth in this contract

(a)    the parcel of land more particularly described in Schedule A attached hereto ("Land"),

(b)    all buildings and improvements situated on the Land (collectively, "Building")

(c)    all right  title and interest of Seller  if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway

(d)    the appurtenances and all the estate and rights of Seller in and to the Land and Building  and

(e)    all right  title and interest of Seller  if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively  "Premises")  The Premises are located at or known as  1467 Bedford Avenue  Brooklyn  NY

Tax Map Designation
Section: _____. Block 1239 Lot  5

§1 02  Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract  subject only to

(a)    the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"), and

(b)    such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed  such acceptance shall be deemed to have been given

## Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Downpayment

§2 01  The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $ 6,750,000 00 (SIX MILLION SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS)

§2.02  All monies payable under this contract  unless otherwise specified in this contract, shall be paid by

(a)    certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank  savings bank  trust company or savings and loan association having a banking office in the State of New York  or

(b)    official bank checks drawn by any such banking institution, payable to the order of Seller  except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing

## Section 3. The Closing

§3 01  Except as otherwise provided in this contract  the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D

## Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser  as follows

§4 01  Unless otherwise provided in this contract, Seller is the sole owner of the Premises

§4 02  If the Premises are encumbered by an Existing Mortgage(s)  no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents

4

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

    (a)    all of the Leases are in full force and effect and none of them has been modified, amended or extended **except by law or by the Lease**;

    (b)    no renewal or extension options have been granted to tenants;

    (c)    no tenant has an option to purchase the Premises;

    (d)    the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;

    (e)    no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

    (f)    Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

    (g)    no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

    (h)    there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06  Intentionally Deleted

§4.07  Intentionally Deleted

§4.08  Intentionally Deleted

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the

5

Premises.

**stewart title**

### Section 5. Acknowledgments of Purchaser
Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

### Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:
    (a)    amend, renew or extend any Lease in any respect, unless required by law or by the terms of the Lease;
    (b)    grant a written lease to any tenant occupying space pursuant to a Tenancy; or
    (c)    terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with
    (a)    either a copy of the proposed lease or a summary of the terms thereof in reasonable detail; and
    (b)    a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other minimal work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease or Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

### Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, none of the notes or notices of violations of law or governmental ordinances, orders or requirements, if any, which were or are noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to

6

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

conditions affecting the Premises none of the liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if

(a)    Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or

(b)    the Building is a multiple dwelling and either

(i)    such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or

(ii)    a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:

(a)    any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or

(b)    any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

**Section 8. Destruction, Damage or Condemnation**

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

**Section 9. Covenants of Seller**

Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser,

7

stewart title

which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof which obligation shall survive the Closing.

§9.06 Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

### Section 10. Seller's Closing Obligations

At the Closing, Seller shall deliver the following to Purchaser.

§10.01 A statutory form of bargain and sale deed with covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02 All Leases initialed by Purchaser and all others in Seller's possession.

§10.03 A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04 A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05 All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06 An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07 (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b) and (b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).

Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08 An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09 All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10 To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.11 Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12 Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13 To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14 An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15 Intentionally Deleted

8

**stewart title**

§10 16  If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law  The deed referred to in §10 01 shall also contain a recital sufficient to establish compliance with such law

§10 17  Possession of the Premises in the condition required by this contract  subject to the Leases and Tenancies, and keys therefor

§10 18  Any other documents required by this contract to be delivered by Seller

**Section 11. Purchaser's Closing Obligations**
At the Closing, Purchaser shall

§11 01  Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing  as adjusted for apportionments under Section 12  plus the amount of escrow deposits, if any assigned pursuant to §10 08

§11 02  Intentionally Deleted

§11 03  Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10 03

§11 04  Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing

§11 05  Deliver any other documents required by this contract to be delivered by Purchaser

**Section 12. Apportionments**

§12 01  The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date
(a)     prepaid rents and Additional Rents (as defined in §12 03),
(b)     real estate taxes, water charges, sewer rents and vault charges  if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises  apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available
(c)     employed at the Premises whose employment was not terminated at or prior to the Closing,
(d)     value of fuel stored on the Premises  at the price then charged by Seller's supplier including any taxes,
(e)     charges under transferable Service Contracts or permitted renewals or replacements thereof,
(f)     permitted administrative charges  if any  on tenants security deposits
(g)     dues to rent stabilization associations, if any,
(j)     Reletting Expenses under §6.02  if any, and
(k)     any other items listed in Schedule D

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation  Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed  Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected  which obligations shall survive the Closing

§12 02  If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority
(a)     first to the month preceding the month in which the Closing occurred,
(b)     then to the month in which the Closing occurred
(c)     then to any month or months following the month in which the Closing occurred, and
(d)     then to the period prior to the month preceding the month in which the Closing occurred.
If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party  which obligation shall survive the Closing

§12 03  If any tenants are required to pay percentage rent  escalation charges for real estate taxes  operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing  then Purchaser shall promptly pay to Seller Seller's

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

**Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Downpayment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, , the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

**Section 14. Broker**

10

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

### Section 15. Notices

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

### Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

### Section 17. Miscellaneous Provisions.

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter; the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule

11

**stewart title**

D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written

PURCHASER(S)                                           SELLER(S)

1467 Bedford Street LLC                                Jason Bijur-NewCo  841 Carroll llc

By:                                                    By

Receipt by Escrowee
The undersigned Escrowee hereby acknowledges receipt of by check subject to collection, to be held in escrow pursuant to §2.05

By

12

## stewart title
RIDER ATTACHED TO AND MADE A PART OF CONTRACT BETWEEN

1467 Bedford Street LLC                    ("Seller") and

Jason Bijur-NewCo                    ("Purchaser"),
concerning the Premises are located at or known as:1467 Bedford Avenue, Brooklyn, NY
Tax Map Designation: Section: _____ Block: _____ Lot: _____
("Premises"):

1. The Purchaser shall take the premises subject to the following:

   a.) Any state of facts an accurate survey may show, provided such facts do not render title unmarketable.
   b.) Covenants, restrictions, easements and consents of record, provided they do not prohibit the erection or maintenance of the structures now on the premises.
   c.) Party wall and party wall agreements, if any;
   d.) Existing tenancies and lease as set forth upon the annexed schedule, which leases have been exhibited to the Purchaser(s) and Purchaser(s) attorneys;
   e.) Possible lack of right to maintain vault area under and coal chutes in the sidewalk.
   f.) Possible encroachments of retaining walls, bay windows, balconies, copings, cellar doors, sidewalk elevators, fences and fire escapes, and variations between record lines, and fences and retaining walls
   g.) Rights, if any acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes in, over and upon said premises.
   h.) Variations between description herein and tax map description.

2. If any past due rentals are owing by tenants at the time of closing of title for a period not exceeding one month and the Seller is entitled to all or part of the said past due rentals, the Purchaser agrees that the first monies received shall be held by the Purchaser as trustee for the Seller on account or in payment of such past due rentals and the Purchaser agrees to remit forthwith to the Seller the amount of such past due rentals to which the Seller is entitled, so collected, out of the first monies received by the Purchaser.

3. The Seller agrees to credit to the Purchaser upon the closing of title (where not prohibited by the terms of a lease), so much of the securities as indicated under leases, upon the execution by the Purchaser of an agreement indemnifying the Seller against any claim that may be made by the tenants in connection with the securities transferred to Purchaser.

4. The Seller makes no representation and assures no responsibility with respect to the continued occupancy of said premises or any part thereof by any tenant or tenants now in possession. The removal of the tenants, whether by summary proceeding or otherwise prior to the delivery of the deed, shall not give rise to any claim on the part of the Purchaser or affect this agreement in any manner whatsoever. Seller, prior to closing of title, shall be entitled but not obligated to enforce the rights under any lease or any tenancy by summary proceedings. Seller agrees to operate the building in a businesslike manner.

5. The existence of mortgages, liens or encumbrances shall not be objections to title, provided that properly executed instruments in recordable form necessary to satisfy same are delivered to the Purchaser at the closing of title together with recording and filing fees, if any, and such mortgage, liens or encumbrances may be paid out of the cash consideration paid by the Purchaser and the title company omits. Notwithstanding the provisions herein, the existence of any violations against the premises shall not be deemed an objection to title provided the seller certifies that it has complied with such violation. Any violation which a tenant is required to remove or comply with pursuant to terms of lease or otherwise, shall not be deemed covered and purchaser will take title subject to same. In the event the aggregate reasonable cost of complying with violations (not certified as complied with by seller) shall exceed the sum of $67,500.00, seller shall have the option of complying with such violation(s) or refusing to comply therewith. In the event the seller refuses to comply therewith, purchaser shall have the option of taking title subject to such violations and receiving an abatement of the purchase price for the reasonable cost of complying with such violations, such abatement, however, not to exceed the sum of $67,500.00, in the aggregate; or the purchaser may refuse to take title and rescind this contract pursuant to the terms of this contract. This paragraph to be read in conjunction with paragrph 16 of the Second Rider.

6. Unpaid liens for taxes, water charges and assessments shall not be objections to title, but the amount thereof, plus interest and penalties thereon shall be deducted from the consideration to be paid hereunder, and allowed to the Purchaser, subject to the provisions for apportionment of taxes and water charges contained herein and title company assures against collection.

13

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

7   Unpaid franchise tax or any corporation in the chain of title shall be no objection to title provided the Seller deposits with the Purchaser's title company in escrow a reasonable amount to secure the payment of such unpaid franchise tax within sixty days from the date of closing of title

8   The Seller has not made and does not make any representations as to the physical condition, income, expense, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no such representations have been made. Purchaser has examined and investigated to its full satisfaction the nature and condition of the real property hereby agreed to be sold and agrees to accept the same "AS IS" Purchaser, in executing this agreement and in undertaking to perform and in performing the same, does not rely upon any statements representations or information by whomsoever made, whether verbal or written statements representations by real estate brokers' "set-ups" or information pertaining to the above premises furnished by any real estate broker agent employee servant or other person unless the same are specifically set forth herein. This contract sets forth the entire agreement of the parties hereto. The acceptance and delivery of the deed of conveyance at the time of closing of title shall be deemed to be full performance and discharge of any and all of the obligations on the part of the seller to be performed on his part pursuant to the terms and provisions of the contract except as to those obligations which are specifically stated to survive the delivery of the deed

9   If for any reason whatsoever the Seller shall be unable to convey a marketable title upon the terms and conditions herein set forth, or be unable to comply with the commitments of the Seller as herein set forth, the Seller, at its option, shall be entitled to reasonable adjournments for the purpose of curing any defects in title or effecting compliance with any of the commitments of the Seller, and if the Seller (who is under no obligation to bring any action or proceeding or otherwise incur any expense whatsoever to cure such defect) is unable to sure such defect within an adjournment period, or if no adjournment is requested by the Seller, the Purchaser shall, at his election, have the right to purchase the property subject to such defect and pay the full consideration thereof without any claim on the part of the Purchaser for abatement, or the Purchaser shall have the right to rescind this contract, upon which rescission pursuant to this paragraph the sole liability of the Seller will be to refund to the Purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York State Board of Title Underwriters and upon such refund this contract shall be null and void. Seller will not suffer or permit any liens to be created between this date and closing except as may be permitted hereunder

10  If between the date hereof and the date of closing of title, any unit in the premises becomes vacant, the Seller shall have the right to rent or lease same for a period not exceeding two years, at the maximum rental permitted by applicable rent law or regulation or at the rental shown herein if the unit is decontrolled. If paid by the Seller, the cost of painting, decorating and furnishing any equipment in such unit shall be pro-rated and paid for by the Purchaser in cash at the time of closing of title. Privilege is hereby given to the Purchaser however, to require that the Seller keep any such unit vacant in which even and upon the closing of title the Purchaser shall pay to the Seller in cash, the Seller's portion of the rent as shown herein for any such unit, adjusted as of the date when such unit became vacant. Such privilege shall be exercised within three days after notice by Seller to Purchaser by registered or certified mail

11  The parties mutually agree that all right, title and interest of the Seller in and to any and all personal property which may be in or upon the premises appurtenant to or used in connection with the operation thereof and owned by the Seller shall be deemed transferred or conveyed to the Purchaser under the deed of conveyance to be delivered, but that no part of the purchase price shall be deemed to have been paid by the Purchaser for same

12  The Purchaser at least ten (10) days prior to the closing of title, shall furnish to Seller's attorney a written notice of any objections to title

13  The acceptance of the deed by the Purchaser herein or assigns shall be deemed full compliance by the Seller of all the terms covenants and conditions of this agreement on the part of the Seller to be performed, and no claims against the Seller shall survive the closing of title except as otherwise expressly stated herein.

14  The sum deposited by the Purchaser hereunder as down payment whether made at the time of execution of this contract or at time hereafter whether required hereunder or agreed to hereafter, shall in the event of default by the Purchaser be retained by the Seller as liquidated damages, and neither party shall have any further claim against the other

15  If the payment made on account of the purchase price at the time of execution of this contract be by check, and if said check shall fail of collection in due course, Seller, at its option may

**stewart title**

declare this contract null and void. Seller may also assess a bounce fee of $_____.

16. If any provision of this Rider shall conflict with any printed provision of this Agreement, the provision of the Rider shall control. However, the provisions of the second rider shall control over the printed provision of this agreement as well as this Rider.

17. Any and all of the subject provisions contained in this contract may be omitted by the Seller in the deed to be delivered hereunder, but all such provisions as omitted shall survive the delivery of said deed or deeds.

18. This contract is not assignable except that purchaser shall have the right to assign the within contract to a corporation to be organized by him in which he is the majority stockholder. Purchaser shall notify Seller in writing of such assignment, upon receipt of which such assignment shall be effective.

19. The Seller represents that the rents listed on the annexed schedule are currently being billed to each of the tenants for the month in which the Contract is dated. All leases expire as per rent schedule annexed. This paragraph survives closing for a period of 6 months.

20. The Seller represents that it has received no written notice of any applications or protests with reference to any rentals set forth on the annexed rent roll filed with any rental authority or administration; that no tenant has been given any further concession or consideration for the rental of any space; and further, that no utilities except cooking gas are included in any rent, except the superintendent, and there are no professional or furnished apartments. This paragraph survives closing.

21. Seller represents that the premises are legal for occupancy by families as per annexed Certificate of Occupancy and seller will deliver a Certificate of Occupancy for same at closing of title.

22. The Seller represents that it has filed the registration required in accordance with the New York State Division of Housing and Community Renewal as required by the Omnibus Housing Act of 1983. This paragraph survives closing and Seller has complied with all applicable regulations of said act since said date.

23. The Seller represents that each apartment is equipped with one stove and one refrigerator owned by the Seller and included in this sale.

24. The Seller will provide to the Purchaser at the time of closing of title an affidavit stating that no work has been done upon the premises by the City where the premises are located and that the City of has not demanded that any work by performed which would result in charges by the City of Emergency Repair Service nor is there any unpaid charge for Emergency Repair Service

25. It is agreed that no party, other than the named Purchaser, shall be liable hereunder as disclosed or undisclosed principal.

26. The Seller represents that at no time during the year last past there has been an Article 7A proceeding affecting the premises and, additionally, as a condition of closing, no Article 7A proceeding will be pending and no rent strike will be in effect.

27. The Seller represents to the best of its knowledge that it has complied with any ordinance or code affecting the premises as to the installation of window guards in apartments in which young children reside. However, this is not intended to be a basis for purchaser not closing and is merely intended for information purposes.

28. At the closing of title hereunder, Seller will deliver to the Purchaser any and all tenant files, credit reports and other documents and papers relating to residential and commercial occupants in the premises.

29. If there are any complaints or proceedings pending for the reduction of any of the rentals and if any are filed prior to closing of title, the Seller will comply with and discharge same prior to closing at the Seller's own cost and expense; and if said complaints or proceedings are not discharged by the Seller, the Seller is to give to the Purchaser a credit for the cost of such discharge of complaints or proceedings at the closing of title. Seller shall be responsible for any rent rollbacks or refunds for the period prior to the closing of title.

30. That none of the tenants has any lease or agreement conferring any rights or estate in the premises and that there are no claims, counterclaims or offsets by any tenant, except as indicated on the rent schedule, and that said leases or agreements, if any, expire as indicated on said rent schedule are presently in full force and effect without any modifications. Wherever on said schedule there is no indication of a lease, the tenant is a statutory or monthly tenant,

15

Docusign Envelope ID: 2EA9C3A5-2545-48EB-9027-5790E50090AF

**stewart title**

further, that any and all leases in existence which have not been exhibited, contain no unusual clauses and all leases contain agreements fully subordinating them to any existing or future mortgage or mortgages in any amounts and on any terms.

31. All securities which may have been received by Seller or predecessor in interest, with regard to any tenant at the premises, together with accrued interest, shall be turned over to the Purchaser on the closing, and the Purchaser shall sign an agreement holding the Seller free from any liability in reference to the securities delivered to the Purchaser. The Seller agrees not to release or return any such securities in whole or in part.

32. Seller represents that any repairs or alterations or equipment to be furnished pursuant to the terms of any lease or mortgage agreement will be done or supplied by Seller at Seller's own cost before closing. That no demand has been made by any mortgagee nor insurance company requiring any work to be done on the premises or for additional fire insurance. The Seller agrees to maintain the premises in their present order and repair and to make any and all repairs or replacements until closing so as to deliver up the premises in substantially their present condition, usual wear and tear excepted.

33. The Seller represents that there are no union contracts or service contracts and that Seller has had no communications during its ownership from any labor unions, nor will it enter into any negotiations or execute any contract with a labor union between contract and closing, nor has it paid any sums of money to any labor union for union benefits or welfare in reference to the premises, nor has Seller received any communications to appear at the State Labor Relations Board, except as listed herein, to wit: (List)

34. Seller will not remove any supplies or equipment now on the premises which are used in connection with the operation of the building.

35. Seller represents that any covenants or restrictions to which Purchaser takes title do not provide for forfeiture or reverter, in the event of violation thereof, nor do they impose any restriction on alteration or demolition of any improvements on the premises.

36. Seller will supply appropriate non-foreign affidavit pursuant to Section 1445 of the Internal Revenue Code as Amended, sufficient to provide an exemption under Subdivision (b) thereof, or if Seller is a foreign person under the terms of such Code, to comply with the provisions thereof.

37. Seller represents that there are no pending harassment proceedings before any administrative agency or any court of competent jurisdiction, and that there have been no harassments filed against the property prior to two (2) years from the date of this Contract.

38. Purchaser shall have reasonable access to the premises during the term of this Contract.

39. Seller represents that if there is no bulk storage of petroleum at the subject premises, it will deliver an appropriate affidavit to that effect at the closing, or if one exists, Seller will deliver a Certificate of Registration of the oil storage tank from the D.E.C.

40. Seller shall deliver at the time of closing all bills, cancelled checks and contracts for the installation of new windows, new boiler and new front doors.

41. In the event seller has filed protests with relation to the assessed valuation of the property for tax purposes and instituted certiorari proceedings for reduction of such valuation and a reduction of taxes shall result, seller shall be entitled to collect refunds representing reductions for all years prior to and including the _____ tax year, the year _____ to be apportioned as of date of title closing. In the event of refund or remission of taxes, all expenses including legal fees shall first be deducted and the balance thereof shall be apportioned between the parties as of date of title closing and the purchases shall pay its share thereof upon such refund or remission. This clause shall survive delivery of the deed.

42. REMOVED

43. REMOVED

44. Any and all notices herein shall be made through the respective attorneys representing the seller and purchaser.

45. The downpayment made hereunder shall be held in escrow by attorneys for seller(s), as Seller's agent (the "Escrow Agent") until (a) the closing of title at which time the escrow funds shall be disbursed to or on behalf of Seller without further authorization or (b) the cancellation of this contract in accordance with the terms hereof, in which event the downpayment shall be disbursed in accordance with the terms of this contract. Said downpayment will be deposited in the attorneys' trust which is an IOLA account (no interest credited to Seller or Purchaser).

16

**stewart title**

The parties acknowledge and agree that the Escrow Agent is holding the escrow funds for the convenience of the parties and Seller and Purchaser agree to indemnify and hold the Escrow Agent harmless, except for its willful malfeasance, from any and all claims or damages, including, but not limited to, court costs, interest, losses and/or expenses, including legal fees, incurred by Escrow Agent as a result of the escrow.

It is agreed that the duties of the Escrow Agent are only such as are herein specifically provided, being purely ministerial in nature and that the Escrow Agent shall incur no liability whatever so long as the Escrow Agent has acted in good faith. The Escrow Agent shall not be required to defend any legal proceeding which may be instituted against the Escrow Agent with respect to the subject matter of the instructions contained herein and shall not be obligated to institute legal proceedings of any kind. The Escrow Agent assumes no liability except that of a stake holder. If there is any dispute as to whether the Escrow Agent is obligated to deliver the escrow fund or as to whom that fund is to be delivered, the Escrow Agent will not be obligated to make any delivery of the fund, but in such event may hold the fund until receipt by the Escrow Agent of an authorization in writing, signed by all persons having an interest in such dispute or their attorneys directing the disposition of the sum or, in the absence of such authorization, the Escrow Agent may hold the sum until the final determination of the rights of the parties in an appropriate proceeding. Further, in the event a dispute shall arise as to the disposition of all or any portion of the escrow funds, the Escrow Agent, at its election, shall have the right to deposit the escrow funds with a court of competent jurisdiction and thereafter be discharged from any responsibility or liability as Escrow Agent.

SELLER:

1467 Bedford Street LLC

BY

PURCHSER:

821 Caroll LLC

By

Second Rider to Contract
1467 Bedford Avenue, Brooklyn, New York

1. As a material inducement to entering into this contract, the provisions of this rider shall prevail over any contrary provisions within this contract or other riders.

2. This transaction is not contingent upon mortgage financing. However, it is acknowledged that the purchaser will seek financing. Seller will deliver title consistent with the commercially reasonable requirements of both purchaser's lending institution and purchaser's title company and any contrary provisions within this contract are of no force and effect.

3. No provisions of this contract may render title fully or partially uninsurable and in such event said provision is rendered null and void.

17

**stewart title**

4. Contemporaneous with the execution of this contract, the seller will deliver a certificate of substantial rehabilitation which will be attached and made a part of the contract hereto.

5. Seller represents the premises are not rent stabilized. To the seller's knowledge, tenants have not made any claims to DHCR or any other regulatory body claiming rent regulated status. This representation survives closing, for a period of three (3) months.

6. Any and all dates related to closing of title or any duty to perform or cure or any other time limitation shall not be time of the essence unless both counsel and the parties are notified via certified mail.

7. For the sole benefit of the purchaser, the parties shall cooperate in the assignment of any mortgage. Any potential savings related to the mortgage recording tax shall inure to the benefit of the purchaser only. The purchaser will pay any and all reasonable costs associated with this assignment.

8. Seller represents that all space as listed on the annexed rent roll is legally occupied and that the existing use and occupancy is in accordance with the Certificate of Occupancy for the building as presently constituted.

9. Seller agrees to maintain the premises in its present order and repair and to make any and all repairs or replacements until closing so as to deliver the premises in substantially and materially their present condition, usual wear and tear excepted.

10. To the seller's knowledge, there has been no organized rent strike or any joint action by the tenants to withhold rent. Seller represents that they have not been notified of any potential litigation or claim on behalf of any tenant or tenants.

11. For purposes of conveying insurable title or to comply with the requirements of purchaser's lending institution, or to meet any other commitment, Seller shall be entitled to reasonable adjournments. However, it is acknowledged that each party intends to perform a tax-deferred exchange under Section 1031 of the Internal Revenue Code. The parties agree to cooperate to effectuate this tax deferred transaction. The parties further agree to cooperate in such exchange to avoid delaying the closing past any statutory time limitations. Absent purchaser's consent, in no event may the closing be adjourned past the 180 day limit by which purchaser must complete this purchase, which time limit expires on May 12, 2026. The parties' cooperation shall not incur any additional expense to either party outside of their own costs. This paragraph is a material inducement for the purchaser to enter into this contract.

12. The parties agree that any changes or additions on the within Contract may be initialed by the respective attorneys for the parties with the same force and effect as if initialed by the parties.

13. Purchaser shall have reasonable access to the premises during the term of this Contract.

14. Seller represents that there are no pending harassment proceedings before any administrative agency or any court of competent jurisdiction, and that there have been no harassments filed against the property for two (2) years from the date of this Contract.

15. Seller to close out any open permits.

16. In conjunction with paragraph 5 of the first rider, in the event the seller needs to cure any issue relating to a violation or defect in title or to conform the premises to any legal requirement, the seller shall expend in the aggregate up to one percent of the purchase price ($67,500.00) to cure any such issue.

17. Seller shall pay for any fines and penalties associated with the violations.

18

stewart title

PURCHASER(S)
921 Caroll LLC

By

SELLER(S)
1467 Bedford Street LLC

By

**Exhibit B**

**Sherman Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                           :

In re:                             :         Chapter 11
                             :

ZACH EHRLICH,             :         Case No. 26-10537 (MEW)
                             :

                Debtor.    :

-------------------------------------------------------------------x

### DECLARATION OF MICHAEL SHERMAN IN SUPPORT
### OF JOINT STIPULATION AND ORDER MODIFYING THE AUTOMATIC STAY
### TO ALLOW THE SALE OF 1467 BEDFORD STREET LLC PURSUANT TO
### SECTION 363(h) ORDER AND BANKRUPTCY CODE SECTION 363(f)

Michael Sherman, being duly sworn, states the following under

penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a licensed broker with and the founder of Baseline Real Estate

Advisors ("Baseline").  I have been a real estate agent in New York since 2012.  I submit

this Declaration (the "Declaration") in support of the Stipulation and Order

(the "Stipulation")[1] for entry of an order modifying the automatic stay to allow the sale

of 1467 Bedford Street LLC, which owns the real property located at 1467 Bedford

Avenue, Brooklyn, NY 11216 (the "Building").

2.      Except as otherwise indicated, I have personal knowledge of the

matters set forth herein and, if called as a witness, would testify competently thereto.

### QUALIFICATIONS

3.      Baseline is a licensed real estate brokerage firm that specializes in

transactions concerning multifamily and mixed-use property sales since its founding in

2021.  Baseline has substantial expertise in the disposition of working with landlords on

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the
Application.

the sale of multifamily buildings in New York City, including in Brooklyn, where the

Building is located.  Specifically, I have previously sold these multifamily properties in

Brooklyn:

- 222 Henry Street, Brooklyn, NY 11201 for $6,500,000
- 144 Baltic Street, Brooklyn, NY 11201 for $4,700,000
- 214-218 Atlantic Avenue, Brooklyn, NY 11201 for $10,600,000
- 238-240 N 5th Street, Brooklyn, NY 11211 for $6,150,000
- 103 3rd Pl, Brooklyn NY 11231 for $3,400,000
- 96 Eckford Street, Brooklyn, NY 11222 for $2,660,000

### THE MARKETING PROCESS

4.     On 2024 I entered into a retention agreement with 1467 Bedford

Street LLC as broker to the 1467 Bedford Street LLC, to assist in the marketing and sale

of the Building.  Pursuant to the exclusive listing agreement between Baseline and the

1467 Bedford Street LLC, I was designated as the Baseline agent representing 1467

Bedford Street LLC.

5.     Prior to listing the Building for sale, Baseline was asked by the 1467

Bedford Street LLC to prepare a price analysis of the Townhouse.

6.     Based upon market conditions, and after consultation with the 1467

Bedford Street LLC, the Building was listed for sale by Baseline at $7.5 million in April

of 2024.

7.     Following listing the Building for sale, Baseline, among other

things:  (a) identified and contacted numerous brokers and potential buyers for the

Building, through direct e-mail correspondence and/or telephone outreach;  and

(b) prepared and distributed marketing materials, including to our direct NYC investor

list of over 5,000 active purchasers.  Additionally, Baseline posted marketing

information regarding the Townhouse on the websites of Costar, Loopnet, and Crexi.

2

8.      To date, Baseline has shown the Building to interested parties approximately 10 times from 2024 through 2026.  Prospective bidders have visited and inspected the Building with their brokers and other representatives.

9.      After we did not receive a bid approaching our initial asking price of $7.5 million we delisted the Building.  We then relisted the Building in mid-2025 and obtained competing offers from multiple interested parties, including 821 Carroll LLC, below the current sale price of $6.75 million.  On October 21, 2025, Baseline HS received an increased offer by 821 Caroll LLC of $6.75 million to purchase the Building on an "as is, where is" basis to be paid in cash at closing.  The terms of the proposed sale are set forth in a contract of sale entered into by and between the 1467 Bedford Street LLC and the 821 Caroll LLC on January 21, 2026.  Prior to the 821 Caroll LLC's $6.75 million offer, none of the offers received by Baseline exceeded the value of the 821 Caroll LLC's $6.75 million offer and/or resulted in a binding written purchase agreement.

10.     I have also been advised that the owner of 821 Caroll LLC has a pending tax event and that 821 Caroll LLC may no longer be interested in purchasing the Building if the transaction is not able to close in the coming weeks.

11.     Based on my extensive experience, I believe that the Building has been appropriately and extensively marketed, and that the offer submitted by the 821 Caroll LLC reflects the highest and best offer available in the market for the Building at this time.

I declare under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

3

Executed on April 20, 2026
New York, New York

*/s/ Michael Sherman*
Michael Sherman

4